FILED
DISTRICT CLERK OF
JEFFERSON CO TEXAS
6/2/2023 11:14 AM
JAMIE SMITH
DISTRICT CLERK
23DCCV0492

NO. _____

| | | |
|---|---|---|
| **JAKE ELLIS DAUGHTRY** | § | **IN THE DISTRICT COURT** |
| **SANDRA MILLER DAUGHTRY** | § | |
| **JOSEPH ELLIS DAUGHTRY** | § | |
| **JAKE'S FIREWORKS** | § | |
| **RIGHT PRICE CHEMICALS, LLC** | § | |
| **BEST BUY INDUSTRIAL SUPPLY, LLC** | § | |
| **LAB CHEMICAL SUPPLY, LLC** | § | |
| **DAUGHTRY INVESTMENTS, LLC** | § | **JEFFERSON COUNTY, TEXAS** |
| *Plaintiffs* | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **SILVER FERN CHEMICAL, INC.** | § | |
| **AND GILDA FRANCO** | § | |
| | § | |
| *Defendants.* | § | **_____ JUDICIAL DISTRICT COURT** |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Plaintiffs Jake Daughtry, Sandra Daughtry, Individually, and D/B/A Jake's Fireworks, Joe Daughtry ("Daughtry Family" or Plaintiffs), Right Price Chemicals, LLC ("RPC"), Best Buy Industrial Supply, LLC ("BBIS"), Lab Chemical Supply, LLC, and Daughtry Investments, LLC, in the above noted and styled Plaintiffs' Original Petition alleging that Silver Fern Chemical, Inc ("Silver Fern") and Gilda Franco are liable for the causes of action set forth.

Plaintiffs reserve the right to replead if new claims and issues arise upon further development of the facts, as permitted by law. In support thereof Plaintiffs would respectfully show the following:

### DISCOVERY CONTROL PLAN

Discovery in this matter is intended to be conducted under Level 3 as set out in Texas Rule of Civil Procedure 190.4.

### JURISDICTION AND VENUE

Venue is proper in Jefferson County, Texas because that is where the events giving rise to this

lawsuit took place.

## **CLAIM FOR RELIEF.**

The damages sought are within the jurisdictional limits of the court. Plaintiffs seek monetary relief over $1,000,000.

1.   Silver Fern and Gilda Franco maintained contacts with Plaintiffs, through email correspondence where order information was transmitted to Jake Daughtry in Nederland, Texas. Exhibit 12 - December 8, 2021 Karr Tuttle Campbell Memo. Gilda Franco admitted to altering emails and sending them to the Government related to the Daughtry prosecution to "cover her tracks". Gilda Franco claims that she did this on her own without having been asked by anyone to do this. Franco claimed to be the only person at the company that had knowledge she had done this, and that she did not consult with anyone or tell any other employee about it. One should never alter evidence and to the extent that the altered evidence was used in a prosecution in Jefferson County against the Plaintiffs, or their business interests this court has jurisdiction over Gilda Franco. The memo reveals a fact issue as to when the emails were modified, whether it was in 2017 or 2021, Plaintiffs did not discover the fabrications until 2021.

2.   Silver Fern purposely availed itself of the protections of the state of Texas by minimum contacts with Texas. Silver Fern shipped 1,4 Butanediol to Nederland, Texas and had a duty to provide warnings and other relevant safety information to Plaintiffs in Nederland, Texas.

3.   All Plaintiffs are residents of Texas and have their principal place of business in Texas.

## **STANDING**

4.   Plaintiffs have standing to bring this lawsuit because they have suffered injury, caused by Defendants' wrongful conduct.  The injuries suffered by Plaintiffs as a result of Defendants' actions may be redressed by this Court.

## PARTIES

5.   Plaintiffs live in Jefferson County, Texas. The last four digits of Jake Daughtry's social security number are 724 and his drivers' license are 401. The last four digits of Joe Daughtry's social security number are 829 and his drivers' license are 781. The last four digits of Sandra Daughtry's social security number are 782 and her drivers' license are 577.

6.   Gilda Franco is an individual that may be served at may be served at her workplace at: 2226 Queen Anne Ave. N., Seattle Washington 98109.

7.   Silver Fern Chemical, Inc. is a foreign corporation that is not registered to do business in Texas and may be served through the Texas Secretary of State at is a domestic corporation and may be served through its registered agents: Lisa King and Scott Lyons at 2226 Queen Anne Ave. N., Seattle, Washington 98108.

## FACTUAL BACKGROUND

## SILVER FERN'S INVOLVEMENT IN FALSE CRIMINAL ALLEGATIONS

8.   **Prior to the raid on July 15, 2020, Silver Fern Chemical was the only chemical supplier identified by the Government that supplied 1,4 Butanediol to RPC in Jefferson County, Texas which Silver Fern sold over the internet and delivered to Nederland, Texas.**

```
15    Q.    Okay.    Now, Silver Fern -- we subpoenaed their records
16    also; is that correct?
17    A.    Yes, ma'am.
18    Q.    And we determined that, as far as we can tell right now,
19    that that was their sole supplier for BDO to Right Price
20    Chemicals.
21    A.    Yes.
22    Q.    Between those time frames you mentioned.
23    A.    Yes.
```

[Exhibit 1 - 1:20-CR-00055 Dkt 272 at p.20 of 117, L 15-23].

9.     On June 3, 2020 a Federal Grand Jury indictment was returned against the Defendants alleging violations of 21 U.S.C. 846 and 841, 21 U.S.C. 802(32)(A), 813, and 841(a)(1) and (b)(1)(c), and 18 U.S.C. 856(a)(1), 21 U.S.C. 841(g), 21 U.S.C. 841(g)(1)(B) and (g)(2)(A)(i), 21 U.S.C. 856(a)(1), 21 U.S.C. 1957; the indictment additionally sought forfeiture of certain real and personal property in the form of a money judgement pursuant to 21 U.S.C. 853 and 881.

10.    The indictment alleges a conspiracy to possess with intent to distribute a controlled substance analogue and a conspiracy to distribute a date rape drug over the internet to an "unauthorized purchaser." The chemical in question is called 1,4 Butanediol and is an industrial solvent that has numerous innocuous uses.[1]

11.    At the heart of the Government's allegations is the question of whether the sales of 1,4 Butanediol were intended for human consumption, as required by the statute. In its filings and arguments in various court hearings the Government has alleged that RPC and the

Daughtrys were not employing voluntary industry practices to ensure sales were not diverted from "legitimate channels".[1]

12.     The Daughtry Family is actually innocent of the allegations, but before they could prove their innocence, Jake Daughtry, with the help of a forensic computer expert, was able to prove that Silver Fern and Gilda Franco fabricated emails. Exhibit 3.

---

[1] Cargill recently issued a press release that it was to build the first commercial-scale, renewable BDO facility in the U.S to satisfy consumer demand for sustainable products. Cargill manufactures butanediol for consumer products. https://www.cargill.com/2021/cargill-and-helm-partner-to-build-$300m-facility – Exhibit 2.

- This Silver Fern produced email, has an additional attachment, and an extra sentence in the body of the email.

| | |
|---|---|
| From: | Gilda Franco <DOM/EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/RECIPIENTS/GILDA> |
| Sent: | 6/6/2017 2:32:03 PM -0600 |
| To: | jake@rightpricechemicals.com |
| Subject: | RE: Ref. New PO 2203-0606 |
| Attachments: | CC receipt Inv 21197.pdf, SFC_BDO_1 4-Butanediol_SDS.pdf |



Jake,

Here is the payment receipt for the past due invoice 21197.

I apologize for not providing a copy of the invoice in advance. I assure this will not happen again.

I will process the new order for shipment ASAP. Please retain our SDS for your records.

Thank you,
**GILDA FRANCO**
Office: 1-866-282-3384
Direct Line: 562-758-7051
www.silverfernchemical.com



**SILVER FERN**
CHEMICAL INC

6

| From: | Gilda Franco <gilda@silverfernchemical.com> |
|---|---|
| Sent: | 6/6/2017 2:32:03 PM -0600 |
| To: | jake@rightpricechemicals.com |
| Subject: | FW: Ref. New PO 2203-0606 |
| Attachments: | CC receipt Inv 21197.pdf |

Jake,

Here is the payment receipt for the past due invoice 21197.

I apologize for not providing a copy of the invoice in advance. I assure this will not happen again.

I will process the new order for shipment ASAP.

Thank you,

GILDA FRANCO

Office: 1-866-282-3384

Direct Line: 562-758-7051

www.silverfernchemical.com

**Findings of the Investigation:**

Due to the changes and missing data from the Silver Fern production, I cannot validate emails the emails. Two receiving accounts with metadata, received emails without the additional attachments and text within the body of the emails. Silver Fern's own emails show inconsistent changes and do not appear to be legitimate.

13. RPC used Lexiconn Internet Services, Inc. to host its email domain.

Jake Daughtry would blind copy his work email with personal emails. In reviewing discovery, Daughtry discovered that the emails between Silver Fern and himself did not match the originals from the server nor the blind copies to Jake Daughtry's personal email.

14. A number of emails between Silver Fern and Jake Daughtry did not match the originals from the server nor the blind copies to the personal email. The primary difference in the emails was the addition of an attached SDS sheet along with added text in the body

7

of the email instructing the receiver to refer to the newly attached SDS sheet which was never provided to RPC by Silver Fern with its shipments of 1,4 Butanediol. The fabricated SDS was not part of the original bill of lading. Exhibit 4.

15.    Below, is the actual SDS information likely provided to RPC:

## SECTION 4: FIRST AID MEASURES

**Eye Contact:**
Check for and remove any contact lenses. Immediately flush eyes with plenty of water for at least 15 minutes, occasionally lifting the upper and lower eyelids. Get medical attention immediately.

**Skin Contact:**
Immediately flush skin with plenty of water for at least 15 minutes while removing contaminated clothing and shoes. Wash clothing before reuse. Clean shoes thoroughly before reuse. Get medical attention immediately.

**Inhalation:**
Move exposed person to fresh air. If not breathing, if breathing is irregular or if respiratory arrest occurs, provide artificial respiration or oxygen by trained personnel. Loosen tight clothing such as a collar, tie, belt or waistband. Get medical attention immediately.

**Ingestion:**
Wash out mouth and water. Do not induce vomiting unless directed to do so by medical personnel. Never give anything by mouth to an unconscious person. Get medical attention immediately.

16.    After defending itself in the criminal action and in the civil action brough by the Government, Jake Daughtry and RPC learned that a fabricated SDS had been presented to the government by Silver Fern and that Silver Fern had actually gone back to old email correspondence between Silver Fern and RPC and modified the emails to make the emails look like they had included the fabricated SDS as an attachment. The fabricated SDS contained information that is inaccurate and, importantly, this information was never sent to RPC before the allegations that lead to the attempt to prosecute the Daughtry family. A comparison of the two documents is essential to understanding the nature of fraudulent activity by Silver Fern. Here is the same section of the fabricated SDS.

## SECTION 4: FIRST AID MEASURES

4.1. Description of first aid measures

| | |
|---|---|
| In case of skin contact: | Wash off immediately with soap and plenty of water.<br>Remove contaminated clothing and wash skin with plenty of soap and water.<br>Flush with Lukwarm water for 15 minutes<br>Seek medical attention if ill effecto or irritation develops |
| In case of eye contact: | Flush with plenty of water for at least 15 minutes, occasionally lifting the upper and lower eyelids.h<br>If eye irritation persists; Get medical advice/attention |
| If swallowed: | If victim is drowsy or unconscious, plase on the left side with head down.<br>If victim is conscious and able to swallow, have victim drink water to dilute.<br>NEVER give anything by the mouth if victim is unconscious or having convulstions. |

Induce vomiting only if advised by a physician or Poison Control Center.
CALL A PHYSICIAN OR POISON CONTROL CENTER IMMEDIATELY!
If vomiting does occur, have victim lean forward to reduce risk of aspiration.
PROMPT ACTION IS ESSENTIAL

If inhaled:       If symptoms are experienced, move victim to fresh air.
Give oxygen or artificial respiration as needed.
Obtain emergency medical attention.
Prompt action is essential

4.2. Most important symptoms and effects, both acute and delayed



Accidental or intentional ingestions can cause depressed repiratory rates, vomiting, seizures, unconsciousness and death

Harmful by ingestion
Ingestion may cause CNS depression (drowsiness and dizziness) and respiratory failure

Vapors may cause drowsiness and dizziness
Always observe self-protection methods
Move out of dangerous area
If you feel unwell, seek medical advice (Show the label if possible)
Show this material safety data sheet to the doctor in attendance

4.3. Indication of any immediate medical attention and special treatment needed



Symptoms: Accidental or intentional ingestion can cause depressed respiratory rates, vomiting, seizures, unconsciousness and death.

Hazards: 1,4-Butanediol (BDO) is rapidly absorbed and metabolized to gamma-hydroxybutyrate (GHB) which is thought to produce the neurotoxic effects of BDO. BOD can completely inhibit the enzyme that metabolizes alcohol, hence combined exposures may increase the toxic effects of alcohol and delay and prolong the toxicity of BDO.

Treatment:    Treat symptomatically
Treatment of overexposure should be directed at the control of symptoms and clinical condition of the patient

17.  Silver Fern had created a presentation to the Government it was supplying RPC with information that it had not been providing RPC while RPC was in business. The documents' materiality stems from the fact that it purports to tie 1,4 Butanediol to the date rape drug GHB and warn distributors that unauthorized purchasers were using the chemical for personal consumption. The information on the fabricated SDS was never provided to RPC or the Daughtry family before their property was raided and seized. Silver Fern, though, made it look like RPC had received the fabricated SDS in order to help the Government with civil and criminal actions against Jake Daughtry, Joe Daughtry, and Sandra Daughtry among others.

10

18. Despite conducting a three-year investigation into the Daughtrys alleged "illegal drug distribution", the Government waited forty-two days to obtain and execute arrest and search warrants in the wake of the indictment.

19. On July 15, 2020, just after the July 4th firework season, multiple agencies including the Drug Enforcement Agency conducted a raid on multiple properties including the fireworks warehouse and the Plaintiffs' personal residences. They seized cash, bank accounts, cell phones, vehicles, computers, real estate, and buildings including all of its contents. They seized all of the family business documents that were essential to the continued operations of the businesses. Exhibit 10.

20. 1,4 Butanediol is known to commonly be utilized as a floor stripper and a wheel-well cleaner for automobiles. It can also be utilized in commercial/industrial settings, in the process of laboratory research operations, and as an electronics cleaner among uses in numerous other consumer products such as spandex products manufactured by Lululemon.

21. At the time of the detention hearing for Jake Daughtry, Walmart, Amazon and E-bay all had 1,4 Butanediol for sale on their own websites in similar quantities for similar or higher prices. Exhibits 5-7.

22. On July 13, 2020, the Government proceeded with attempts at separate civil forfeiture efforts before The Honorable Judge Michael Truncale. An Emergency Ex Parte Motion was also filed requesting a temporary restraining order under 28 U.S.C. 856(e). [1:20-CV-305] The Court Granted the Government's request, in part, based at least in part on misleading and false information provided by Silver Fern Chemicals ("SFC"). The fabricated evidence at issue in this petition was actually used in Court in Beaumont,

Texas against Plaintiffs.

23.    Additionally, the Government sought to show that RPC should have behaved like Silver

Fern, by providing this information to the purchasers of the product. The Government

sought to contrast the "good behavior" of Silver Fern with the alleged failure of RPC

to include the SDS it had been provided by Silver Fern. RPC was, therefore, held to an

impossible standard by the Government as RPC was expected to have sent information

it never actually received from Silver Fern. The Silver Fern SDS was modified by SFC

employees and never sent to RPC making it impossible for RPC to meet a fictitious,

"voluntary industry standard" the Government sought to impose.

24.    On November 7, 2019, without Plaintiffs' knowledge, the Government began

requesting information from Silver Fern Chemical, Inc., and a cooperative

relationship was formed between the Government and Silver Fern. It is during this

relationship that the fraud was committed, and fabricated evidence was developed to

create a false history of "vetting procedures" that did not exist in reality.

25.    On December 4, 2019, less than 30-days after the Government's initial subpoena for

information, a Silver Fern employee sent an email to RPC stating:  *"It has come to our*

*attention that although 1,4-Butanediol ("1,4-BDO") is not a controlled substance listed*

*by the DEA, it can be diverted for illicit use."* and *"We can ship this out ASAP, but*

*before we ship this to you, we need to have you fill out another regulatory form from*

*the DEA."*  (emphasis added)

26.    On September 2, 2020, a hearing was held before Judge Truncale wherein the

Government called a private contractor and former DEA Agent named Jerry Salameh

to the stand. Mr. Salameh "authenticated" a number of exhibits during his testimony.

Through AUSA Wells, the Government admitted and relied on a fabricated SDS sheet from SFC which resulted in an injunction that prevented the Daughtrys from opening their lawful businesses [1:20-CV-305 at Dkt. 38-4]. Plaintiffs suffered egregious harm by eliminating their sources of income and severely limiting their ability to finance their defenses.

27. Around March of 2021, the Government provided fabricated emails from SFC to Jake Daughtry in discovery for the criminal case. These emails were produced in PDF format only, resulting in all meta data being stripped from these fabricated SFC emails.

28. Through his defense counsel, Jake Daughtry, sent his own subpoena to Silver Fern to obtain electronic versions of the documents for further analysis.

29. Silver Fern and the Government coordinated their efforts to omit information from the subpoena response to Daughtry, importantly, Silver Fern omitted any internal Silver Fern SDS sheet(s) in any response to the government's first four subpoenas.

30. Silver Fern further omitted at least three folders of purported "order" information in any of their responses to the government's first four subpoenas.

31. The Silver Fern response to the Daughtry subpoena does not match the Silver Fern documents produced by the government to Daughtry in criminal discovery.

32. Silver Fern had omitted from its response all email correspondence from the government regarding RPC as well as all email correspondence between Silver Fern and RPC.

33. In August of 2021, RPC worked with an expert to determine that the emails were altered, and they had been used in the prosecution of the Plaintiffs. The emails provided not

just one example but more than a dozen.

34.    The Government attorney that used the emails in the criminal prosecution was removed from the case. Silver Fern Chemical, their outside counsel Mr. Friedman, Government agents or a combination of these actors have conspired to obstruct justice and commit fraud on the Plaintiffs, multiple courts in the Eastern District of Texas, and the justice system as a whole.

35.    The Government then allowed the known fabricator, Silver Fern, to conduct its own internal investigation to determine how or why it passed fabricated emails to the Government in response to a subpoena. In Silver Fern's response to the Government's request, Silver Fern apologized and then provided one example of a "real" email sent to Plaintiffs. The Government then asserted to Plaintiffs that it was satisfied with Silver Fern's investigation and that the Government had concluded any investigation of its own. A computer expert was able to verify that this single email was also fabricated.

36.    In January 2022, the Government issued a memo to Jake Daughtry from Silver Fern's paralegal which is dated December 9, 2021. Exhibits 8-8B. In the memo, a December 8, 2021 Silver Fern TEAMS meeting is referenced that purports to contain the details related to how the emails were fabricated by a Silver Fern employee, Gilda Franco, and then tendered to the Government for use in the prosecution of the Plaintiffs.

Ms. Franco rubbed her brow and yawned multiple times, before stating: "I mean, the only explanation I can think of is that I was attaching them after the fact to… *ummm*… ensure that they were having a copy of the SDS."

Mr. Friedman asked for clarification. Ms. Franco yawned. "Sorry." She paused and then said, "Attaching the SDS after I sent the original email so they would have copy of the SDS."

Mr. Friedman informed her that we haven't found evidence that she actually sent the SDS to the shipper on these specific occasions under discussion. He then said, "We can come up with no other explanation than that after you sent this email to them, at some point, you perhaps realized that the SDS hadn't been attached, that you, on Silver Fern's end, you just went and added them to the email as a matter of our record. You changed the email, but the email that actually went to them didn't contain the SDS and didn't reference the SDS. Is that possible?"

Ms. Franco then stated: "Yeah, it could be."

Mr. Friedman then asked her what motivated her to do this and whether anyone else influenced her decision to alter the emails.

FRIEDMAN: "What made you want to do that?"

FRANCO: "Just to cover our tracks. To cover my tracks."

37. In the memo, it was identified that the emails to RPC were altered in 2021 after Mr. Friedman, Silver Fern's attorney became involved and after Tim Lyons contacted Gilda Franco in February 2021 to "find any additional email if it existed regarding the SDSs."

38. In the memo, there is reference to confusion related to implementation of when SDSs would be sent at Silver Fern and there was indication that Silver Fern CSRs had access to RPC emails.

39. The Government was relying on Silver Fern communications in an attempt to establish concepts such as the appropriate "industry standard" and protocol for "due diligence" when in fact Silver Fern had fabricated these communications and actually omitted this information from communications to RPC.

40. The Government filled the void caused by the Attorney General's failure to promulgate any regulations for record-keeping and reporting by persons handling 1,4 Butanediol, by looking to Silver Fern's fabricated documents. See 21 U.S.C. § 841(g)(3).

41.   DEA Contract Investigator Jerry Salameh testified on September 2, 2020, that in order for RPC to comply with federal law, it would have needed to "maintain the same protocols…Silver Fern Chemical put on Right Price Chemicals as certifying Right Price Chemicals was an authorized buyer and meeting all the parameters of the vetting procedure."

42.   Silver Fern fabricated information and sent it to the Government about what such a procedure looked like by providing fabricated emails in an attempt to show a "history" indicating Silver Fern was behaving according to a fictitious standard.

43.   This fictitious standard created by Silver Fern resulted in Plaintiffs being  criminally charged.

44.   Plaintiffs suffered additional harm when the Government used the fraudulent documentation and emails from SFC along with the fictitious standard SFC fabricated to seize and destroy hundreds of thousands of dollars of hand-sanitizer and chemical inventory from RPC completely unrelated to 1,4 Butanediol.

45.   The fraudulent conduct by SFC including the fabricated emails and SDS along with the fictitious voluntary "industry standard" and "due diligence" practices created the basis for the Governments' attempts at civil and criminal prosecution.

46.   In its first response to the Government subpoenas sent to Silver Fern, no end user forms were provided. This is likely because Silver Fern had interpreted the statute as not requiring those forms. By going back in time to manipulate emails allegedly sent before the regulations changed and caused confusion related to the standard of care for end user forms. Silver Fern put pressure on their employees to make sure that the standard created in 2019 was documented by fabrications as having been implemented by Silver

Fern in response to the documents that were to be provided to the Government in its investigation of RPC. Silver Fern, therefore, created a fraudulent standard through its manipulation and fabrication of information to cover its tracks. This information was then used in the criminal prosecution of RPC.

47.    One of Silver Fern's final acts of fraud occurred on or about June 29, 2020, when Silver Fern made a decision to stop selling 1,4 Butanediol and notified *other Silver Fern customers* but **intentionally did not notify RPC**. If Silver Fern had alerted RPC it was discontinuing supply and any reason why the parties dealings together related to 1,4 Butanediol should change in away from its prior course, RPC would have acted. Instead, this critical omission constitutes actionable fraud that harmed all Plaintiffs as alleged in this Complaint. Exhibit 9.

**From:** Sam King <sam@silverfernchemical.com>
**Sent:** Monday, June 29, 2020 10:14 AM
**To:** Gilda Franco <gilda@silverfernchemical.com>; Troy Kinto <troy@silverfernchemical.com>
**Subject:** RE: right price

Gilda,

I just spoke to Troy who is going to communicate with the customer.

Our course of intended action is to advise the customer that we have no available supply due to procurement issues from supplier.   And that no further information will be provided. i.e. if the customer asks just say we're having issues procuring material from our vendor at the moment.

We are not telling them we're getting out of the business at this point.

Call me with any questions.

Sam

Sam King
President

Silver Fern Chemical Inc
**Direct Line: (805) 960-5138**
Main Office: ph (866) 2823384 ext 104
Mobile: (206)779-2305
www.silverfernchemical.com

## <u>COUNT ONE: COMMON LAW FRAUD</u>

48.    The elements of common law fraud are (1) "a material misrepresentation" that (2) "was false," (3) "was either known to be false when made or was asserted without knowledge of its truth," (4) "was intended to be acted upon," (5) "was relied upon," and (6) "caused injury." *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015) (quoting *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)).

49.    Under Texas law, a fraudulent representation underlying a common law fraud claim may be based on the defendant's misrepresentation to another if either: (1) The defendant intended for the misrepresentation to be repeated to and deceive the plaintiff. (2) The defendant knew the misrepresentation was especially likely to reach   and   influence plaintiff's   conduct.   *Ernst   &   Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 578-80 (Tex. 2001).

50.    A defendant who acts with knowledge that a result will follow is considered to intend the result. See generally *Formosa Plastics Corp. v. Presidio Eng'rs Contractors*, Inc., 960 S.W.2d 41, 48- 49 (holding that evidence the defendant knew the plaintiff would rely on its representations supported fraud finding).

51.    Fraud by non-disclosure is a theory by which the misrepresentation element of fraud can be proven.

52.    Fraud by non-disclosure is premised on the notion that silence may be as misleading as a positive misrepresentation of facts.

53.    Fraud by non-disclosure is implicated by RPC's prior course of dealings with Silver Fern and by the fact that Silver Fern had provided RPC critical information through the course of its dealings with RPC, such as the SDS which was relied on by RPC.

54.    Silver Fern had a duty to disclosure information because making a partial disclosure or omitting the disclosure it was exiting the market created a false impression to RPC while at the same time Silver Fern was fabricating evidence that it had informed RPC of the standard.  Exhibit 11.

## COUNT TWO: NEGLIGENT MISREPRESENTATION

55.    The elements of negligent misrepresentation are: (1) the representation in question was made by the defendant in the course of his business or in a transaction in which he had a pecuniary interest, (2) the defendant supplied false information for the guidance of others in their business, (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Fed. Land Bank Ass'n of Tyler v. Shane*, 825 S.W.2d 439, 442 (Tex. 1991); see also *Roof Sys., Inc. v. Johns Manville Corp.*, 130 S.W.3d 430, 439 (Tex. App.-Houston [14th Dist.]

2004, no pet.) ("The false information' contemplated in a negligent misrepresentation case is a misstatement of existing fact, not a promise of future conduct.").

## **COUNT THREE: CONSTRUCTIVE FRAUD**

56.    Constructive fraud is "the breach of a legal or equitable duty that the law declares fraudulent because it violates a fiduciary relationship. *Hubbard v. Shankle*, 138 S.W.3d 474, 483 (Tex. App.—Fort Worth 2004, pet. denied). "A fiduciary relationship may arise from formal and informal relationships and may be created by contract." *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, no pet.). An informal fiduciary relationship, however, "may arise where one person trusts in and relies upon another, whether the relationship is a moral, social, domestic, or purely personal one." Id. (quoting *Jones*, 196 S.W.3d at 449). In other words, a fiduciary relationship "exists where a special confidence is reposed in another who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Tex. Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 507 (Tex. 1980) (quoting Lappas v. Barker, 375 S.W.2d 248, 251 (Ky. 1964)).

## **COUNT FOUR: FAILURE TO WARN BY SILVER FERN**

57.    Silver Fern failed to warn Plaintiffs despite the fact that it knew of the danger posed by the product.

58.     Silver Fern had a duty to warn RPC of the danger related to the product and failed to adequately do so.

59.     Silver Fern was negligent in relation to their duty to warn RPC.

60.     Silver Fern's failure to warn resulted in injury to the plaintiffs.

## COUNT SIX: CONSPIRACY

61.     The individual Defendants in cooperation with Silver Fern, namely Gilda Franco, Timothy Lyons, and Sam King agreed to work together to achieve an unlawful goal which was to deceive the DEA, obstruct justice by fabricating evidence and providing it in response to a federal criminal subpoena.

62.     The conspiracy was furthered by the actions of Gilda Franco, Timothy Lyons and Sam King.

63.     Silver Fern has offered, through Gilda Franco, an explanation as to how she fabricated emails, but she remains employed by Silver Fern despite fabricating evidence and providing to the Government to use in the prosecution of the Plaintiffs as well as the seizure of their property and other business interests as outlined in this Complaint.

64.     Silver Fern, Franco, Lyons, and King all benefited by avoiding criminal prosecution, but they also intentionally did not inform RPC or its owners that they had made a decision to stop selling 1,4 Butanediol and leave the market. Silver Fern did inform other customers, but intentionally did not inform RPC of its decision.

65.     Fabricating evidence is illegal. 18 USC § 1001 provides that is a federal crime to make or use any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

66.     The facts that support fabricated evidence are admitted by Silver Fern and Gilda

Franco.

67.    The fabricated evidence that is subject to the conspiracy complaint was used in this Court and admitted into evidence against Jake Daughtry, Joe Daughtry, Sandra Daughtry, as well as against their various business interests outlined in this Complaint.

## REQUEST FOR RELIEF

68.    The Daughtry Family owns real estate and operated lawful family businesses in Jefferson County, Texas for decades. The Daughtrys are Southeast Texas natives from Nederland, TX who have worshiped, worked, lived and raised their family in this community their entire lives.

69.    In 1968, Sandra began working for the City of Nederland. She went on to work there for 32-years before retiring in 2000.

70.    In 1986, Joe established Daughtry Signs. Joe Daughtry is a resident of Nederland, Texas and established his businesses there. He started by fabricating portable signs to rent and sell to other local small businesses.

71.    Daughtry Signs eventually expanded to a full-service sign business including sign painters, welders, fabricators and maintenance services. Customers included businesses such as Sonic, Burger King, Conn's, Market Basket, 5 Point Credit Union, convenience stores and outdoor billboards for MDF Outdoor.

72.    Jake's Fireworks was established in 1990. This business is owned by Joe and Sandra Daughtry of Nederland, Texas. Named after their son Jake, who was just 4 years old

at the time, the fireworks business progressed from a lease with two small outdoor stands to two larger and nicer stands.

73.  Being in Southeast Texas, there were advantages to the customers' comfort if they could shop for fireworks inside out of the weather, so the Daughtrys eventually decided to build a small indoor stand.

74.  In 2002, with some help, the Daughtrys were blessed to be able to purchase property and build the 10,000 square foot building that has since been known as Jake's Fireworks, one of largest indoor retail firework buildings in the State of Texas.

75.  Having built a customer base for over 30 years, the Jake's Fireworks business provided the Daughtrys supplemental income which they eventually used as a means to help with college tuition payments while Jake attended Texas A & M University.

76.  In 2009, Jake established Right Price Chemicals (RPC), an online retail business that sold industrial chemicals and laboratory supplies. Jake Daughtry, a resident of Nederland, Texas, is the owner of RPC, Best Buy Industrial Supply, LLC, and Lab Chemical Supply, LLC. Best Buy Industrial Supply, LLC was established by Jake Daughtry in 2015 and had built a customer base across the United States.

77.  Jake's RV Park is owned by Joe and Sandra Daughtry and is a 38-site development that was developed in 2010 and consistently booked at greater than 80% occupancy.

78.  Since 2010, the Daughtry family has sold Derksen portable buildings on commission.

79.  Daughtry Investments, LLC owned and operated a pre-existing Washateria business.

80.  Lab Chemical Supply, LLC also sold chemicals and laboratory supplies including

items such as Isopropyl Alcohol which had become the largest volume product during the Covid-19 pandemic.

81.    On January 18, 2022, the indictment against Sandra Daughtry was dismissed. However, the other Plaintiffs continue to litigate to prove their innocence.

82.    The named Plaintiffs in this cause were injured as a result of the causes of action plead in this Complaint. The businesses outlined in this section of the Complaint were raided and closed and the individual interests of Jake Daughtry, Joe Daughtry, and Sandra Daughtry were reduced to nothing as the businesses could no longer operate for a period of time.

83.    Plaintiffs seek direct damages from fraud, actual damages, exemplary damages for fraud, prejudgment and post-judgment interest, reasonable attorneys' fees, consequential damages, expert fees, court costs, damages that in reasonable probability will be sustained in the future.

## DEMAND FOR A JURY TRIAL

84.    Plaintiffs demand a jury trial for all issues in this matter.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, herein, prays in the manner and particulars noted above, including and especially as to the declaratory relief and injunctive relief requested; actual damages, attorney's fees and costs for the preparation and trial of this cause of action, and for its appeal if required, together with pre-and post-judgment interest for same, and for such other relief as this Court may deem just and proper, whether at law or at equity or as to both.

Respectfully submitted,

THE MONK LAW FIRM

*/ s/ Brandon P. Monk*
BRANDON P. MONK
State Bar No. 24048668
4875 Parker Drive
Beaumont, Texas 77705
Phone: (409) 724-6665
Fax:  (409) 729-6665
brandon@themonklawfirm.com

ATTORNEY FOR PLAINTIFFS